UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JANET ASHBAUGH,

        Plaintiff,

   - against -

WINDSOR CAPITAL GROUP, INC. and
MARRIOT INTERNATIONAL INC.,

        Defendants.
----------------------------------------------------------x

MEMORANDUM AND ORDER

10 Civ. 4647 (ILG) (LB)

GLASSER, Senior United States District Judge:

On October 8, 2010, plaintiff Janet Ashbaugh ("Ashbaugh"), a New York resident, initiated this diversity action against Windsor Capital Group ("Windsor"), a California-based hotel management company, and Marriot International, Inc. ("Marriot"), Windsor's Maryland-based franchisor, alleging that as a result of defendants' negligence she received "bed bug bites and rashes on her body" during a stay at one of the hotels Windsor manages, the Residence Inn by Marriot Atlanta-Midtown (the "Residence Inn" or "hotel"). Complaint dated Oct. 11, 2010 ¶ 21 ("Compl.") (Dkt. No. 1). Ashbaugh seeks $2,000,000 in damages. Currently before the Court is defendants' motion for summary judgment, seeking dismissal of Ashbaugh's complaint in its entirety. For the following reasons, defendants' motion for summary judgment is hereby GRANTED.

## I. BACKGROUND

The pertinent facts, either undisputed or, where disputed, viewed in the light most favorable to Ashbaugh are as follows.[1] Late in the day on April 16, 2009, Ashbaugh

---

[1] Ashbaugh's Rule 56.1 Statement does not comply with Local Civil Rule 56.1(d), requiring "each statement controverting any statement of material fact, [to] be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Failure to comply with Local Rule 56.1 permits a reviewing court to consider

and her husband checked into Room 327 (the "room") at the Residence Inn. Defendants' Local Rule 56.1 Statement of Undisputed Material Facts dated Apr. 13, 2012 ("Defs.' 56.1") ¶ 11 (Dkt. No. 36). They noticed nothing wrong with the room; nor did they find any insects in it. Id. ¶ 13. The following day, after sleeping through the night without incident, they awoke and again noticed no insects in the room. Id. ¶¶ 16-17. After spending the day in Atlanta celebrating the marriage of her brother which was to take place the next day, Ashbaugh returned to the room around 10:30 or 11:00 p.m. and found the room to be in a "made-up state." Id. ¶¶ 18-19. Shortly thereafter, she went to sleep. Id. ¶ 20. On the morning of April 18, 2009, at around 7:00 a.m., Ashbaugh rose, and her husband noticed welts all over her body. Id. ¶¶ 26- 27.

Ashbaugh then told her father, who was in the room next door, about the welts, and he and Ashbaugh's husband inspected the room for insects but did not find any. Id. ¶¶ 31-32. Shortly thereafter, Ashbaugh, her husband, and her father went down to the Residence Inn lobby, and Ashbaugh told Sharonee Parker ("Parker"), the manager on duty at the time, about the situation; she also asked Parker to call an ambulance so she could be taken to a local hospital. Id. ¶ 33. Ashbaugh's complaint to Ms. Parker was memorialized in a Residence Inn Incident Report. See Declaration of Elliot B. Pasik dated May 4, 2012 ("Pasik Decl.") Ex. B (Dkt. No. 42). The Incident Report states, among other things, that Ashbaugh "requested her room to be check [sic], and also to be

---

the facts at issue undisputed for purposes of the motion. See Fed. R. Civ. P. 56(e)(2); Local Civil Rule 56.1(c); see also T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (citation omitted)). It is unnecessary for the Court to do so, however, as even excusing Ashbaugh's noncompliance with Rule 56.1, the Court finds summary judgment warranted for the reasons explained below.

transferred to another room. Guest states something is wrong in the room; and it needs to be thoroughly inspected." Id. Ashbaugh and Parker each signed the Incident Report. Id.

An ambulance soon arrived, taking Ashbaugh to the nearby Piedmont Hospital. Defs.' 56.1 ¶ 34. Once there, Ashbaugh reported to the treating nurses and doctor that she believed she had had an encounter with bed bugs. Id. ¶ 35; Declaration of David Rutherford dated Apr. 13, 2012 ("Rutherford Decl.") Ex. H (Dkt. No. 35). After receiving several prescriptions to treat the insect bites on her body, Ashbaugh returned to the Residence Inn. Defs.' 56.1 ¶ 38. Ashbaugh's husband once again inspected the room for insects but did not see any. Id. ¶ 39. They then transferred rooms and were given a complementary night's stay. Id. ¶ 40.

After transferring the couple to a new room, the hotel called Bug-Off Exterminators to inspect Room 327 for bedbugs. Id. ¶ 43. Charles Senic, the General Manager of the Residence Inn during the time of Ashbaugh's stay, testified that the Bug Off inspector did not find bed bugs or any other insects in the room. Rutherford Decl. Ex. E. (Senic Dep.), at 45.

On April 19, 2009, Ashbaugh and her husband returned to their home in New York, and shortly thereafter, Ashbaugh received further medical treatment and was prescribed additional antibiotics. Defs.' 56.1 ¶ 45; Pasik Decl. Exs. D-E.

On October 8, 2010, Ashbaugh filed suit in this district asserting claims for common law negligence and negligence per se against Windsor and Marriot. Compl. ¶¶ 27-30. Defendants on April 13, 2012 filed their motion for summary judgment. Defendants' Memorandum of Law in Support of Summary Judgment dated Apr. 13, 2012 ("Defs.' Mem.") (Dkt. No. 37). Ashbaugh on May 4, 2012 filed her submissions in

3

opposition to defendants' motion, and defendants on May 11, 2012 filed their reply. Plaintiff's Memorandum of Law in Opposition to Summary Judgment dated May 4, 2012 ("Pl.'s Mem.") (Dkt. No. 43); Defendants' Reply Memorandum of Law dated May 11, 2012 (Dkt. No. 45). The Court held oral argument on May 18, 2012.

Defendants contend summary judgment on Ashbaugh's claims against Marriot is warranted because Marriot is simply a franchisor that had no control over the day-to-day operations of the Residence Inn. Defs.' Mem. at 7-8. They also argue summary judgment is required on Ashbaugh's claims against Windsor because the record contains no evidence that Ashbaugh contracted the bug bites on her body from her room at the Residence Inn or that the room was ever infested with bed bugs or other insects. Defs.' Mem. at 8-15. Ashbaugh fails to address defendants' former contention and, with respect to their latter contention, argues that Ashbaugh's testimony and the medical records from her visits to various physicians are sufficient to raise an issue of fact as to whether she was bitten by bed bugs or other insects during her stay at the Residence Inn. Pl.'s Opp'n at 3-5. The Court turns to these contentions below.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'" Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quoting Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008)).

The moving party bears the burden of establishing the absence of any genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. Id. at 322-23. To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot "'rely on conclusory allegations or unsubstantiated speculation.'" Id. (quoting Fed. Deposit Ins. Corp. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010)).

A court deciding a motion for summary judgment must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quoting Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004)). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

**B. Summary Judgment is Granted as to the Claims Against Marriot**

Under Georgia law,[2] to impose liability "on a franchisor for the acts of a franchisee, a plaintiff must show that the franchisor has obligated itself to pay the

---

[2] The parties agree that Georgia law applies. Defs.' Mem. at 7; Pl.'s Opp'n at 4. Under New York choice of law rules, where both parties agree as to the applicable law,

5

franchisee's debts or that the franchisee is not a franchisee in fact but a mere agent or alter ego of the franchisor." Summit Automotive Grp., LLC v. Clark, 298 Ga. App. 875, 883 681 S.E.2d 681 (2009) (citations and internal quotations omitted). Relying on this principle, Marriot—Windsor's franchisor—argues that summary judgment on the claims against it is required because there is no evidence in the record to establish that it somehow obligated itself to pay the debts of Windsor or that Windsor is in fact its agent or alter ego. Defs.' Mem. at 7-8. Ashbaugh does not provide any response to this argument in her opposition papers, and the Court thus deems the claims against Marriot as abandoned. See, e.g., Hyek v. Field Support Servs., Inc., 702 F. Supp. 2d 84, 102 (E.D.N.Y. 2010) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (collecting cases)); accord ADP Dealer Servs., Inc. v. Planet Automall, Inc., No. 09 Civ. 0185 (ILG) (RER), 2012 WL 95211, at *7 (E.D.N.Y. Jan. 12, 2012) (quoting Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)). Marriot's motion for summary judgment on Ashbaugh's claims against it is therefore granted.

### C. Summary Judgment is Granted as to the Claims Against Windsor

Ashbaugh alleges causes of action against Windsor for common law negligence, and negligence per se premised on violations of Georgia Code § 51-3-1 and § 43-21-30. Compl. ¶¶ 27-30. "To prevail on a cause of action for negligence under Georgia law, the plaintiff must establish the essential elements of duty, breach of duty, proximate causation and damages." Gordon v. Starwood Hotels & Resorts Worldwide, Inc., 821 F.

---

that agreement is sufficient to establish choice of law. See, e.g., Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 566 (2d Cir. 2011).

6

Supp. 2d 1308, 1312-13 (N.D. Ga. 2011) (citing Black v. Georgia S. & Fla. Ry. Co., 202 Ga. App. 805, 806, 415 S.E.2d 705 (1992)).  As for the duty owed, Windsor owes a duty to its invitees—here, Ashbaugh—to exercise ordinary care in keeping its premises safe. Ga. Code § 51-3-1 (West 2012).[3]  An owner of real property such as Windsor "is not the insurer of the invitee's safety, . . . but is bound to exercise ordinary care to protect the invitee from unreasonable risks of harm of which [the proprietor] has superior knowledge.'" Anderson v. Radisson Hotel Corp., 834 F. Supp. 1364, 1370 (S.D. Ga. 1993) (quoting Lau's Corp., Inc. v. Haskins, 261 Ga. 491, 405 S.E.2d 474, 476 (1991)). Georgia law also requires innkeepers such as Windsor to provide its guests with clean bed linens.  Ga. Code § 43-21-30.[4]

Primarily at issue here are the elements of breach and causation.  Defendants contend summary judgment is required because there is no evidence in the record—other than Ashbaugh's unsubstantiated speculation—that shows that Windsor breached any duty owed to plaintiff and caused Ashbaugh's injuries during her stay at the Residence Inn.  Defs.' Mem. at 9-12.  The Court agrees.

---

[3] Section 51-3-1 provides:

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

Id.

[4] Section 43-21-30 provides:

It shall be the duty of every hotel keeper or innkeeper to furnish clean bed linens, unused by any other person since the last laundering thereof, on all beds assigned to the use of any guest or patron of such inn or hotel.

Id.  Violators of this provision "shall be guilty of a misdemeanor." Id. § 43-21-33.

7

There is no evidence in the record to establish that Windsor provided Ashbaugh with an unclean, dangerous, or hazardous hotel room or in any way violated Sections 51-3-1 or 43-21-33. At no point did Ashbaugh or her husband ever see any insect in their hotel room. Rutherford Decl. Ex. D (Ashbaugh Dep.), at 67-68 ("Q. Did you ever see an insect in the room? A. No. Q. Did your husband ever tell you he saw an insect in the room? A. No."); id. Ex. F. (Hammad Dep.), at 25 ("Q. Did you see any bugs in the room? A. Surely not."); id. Ex. F. (Hammad Dep.), at 70-71 ("Q. When you went back to grab your bag did you see anything wrong with the room at that point? A. No. Q. Any bugs in the room? A. No. But Janet I think she say [sic] that some blanket, she tells me this caused all our problems. . . . Q. Did she ever tell you she saw bugs on the blanket? A. No.").

Ashbaugh's father, who also inspected the room after Ashbaugh discovered the welts on her body, never saw any insects in the room either. Id. Ex. D (Ashbaugh Dep.), at 43-44 ("Q. Did anybody look around the room and see if there was anything going on? A. I think this time my dad said something to my husband, let's look and see if it could be a bug or anything. Q. Did they, in fact, look around? A. Yes, at this time they were looking around and didn't see anything."). The same is true with respect to the inspector from Bug Off Exterminators—after being called to examine Ashbaugh's room after the alleged incident, he too did not find any insects in the room. Id. Ex. E. (Senic Dep.), at 45 ("Q. Now, by 'anything,' you took it to mean that Shane did not find any bedbugs, right? A. Did not find any insects."). It is similarly undisputed that Ashbaugh's hotel room was in a clean and sanitary state on the night Ashbaugh alleges bedbugs bit her. Rutherford Decl. Ex. D (Ashbaugh Dep.), at 24 ("Q. Your room was

made up during the day by the maid service?  A.  Yes.  Q.  When you eventually came back to the room, was it in a made-up state?  A.  Yes.").

The record is also devoid of any evidence showing that Windsor had notice or "superior knowledge" of any insects in Ashbaugh's room or the Residence Inn as a whole.  Cf. Livingston v. H.I. Family Suites, Inc., No. 05 Civ. 860 (ORL) (KRS), 2006 WL 1406587, at *6 (M.D. Fla. May 22, 2006) (hotel's motion for summary judgment on negligence claim denied where there was evidence of its knowledge of infestation of plaintiff's hotel room 15 days before plaintiff stayed there).  In fact, Charles Senic, the General Manager of the Residence Inn from July 2006 to July 2011 testified that during his time as the General Manager Ashbaugh's complaint was the only one he ever received regarding alleged insects in the hotel.  Id. Ex. E (Senic Dep.), at 34 ("Q.  Had you ever handled any complaint of insect bites before, starting from 2000 onwards?  A.  No, sir.").

Ashbaugh argues that her own testimony, along with the medical records from her visits to various physicians, are sufficient to create a fact question as to whether she was bitten by bedbugs or other insects during her stay at the Residence.  Pl.'s Opp'n at 3.  But Ashbaugh's unsubstantiated testimony is based on nothing more than a speculative belief that she was bitten by bedbugs—not on personal knowledge—and is thus insufficient to create an issue of fact for trial.  See, e.g., Myers v. Cnty. of Nassau, 825 F. Supp. 2d 359, 366 (E.D.N.Y. 2011) ("Evidence considered sufficient to defeat summary judgment is generally offered in the form of affidavits or deposition testimony.  Such evidence must be based upon the personal knowledge of the witness, must set forth facts admissible in evidence, and the speaker must be shown competent to testify thereto."

9

(citing Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001))).[5] The medical records Ashbaugh relies upon do not reflect any medical opinion as to whether Ashbaugh was, in fact, bitten by bedbugs or any other insect while staying at the Residence Inn; they instead reflect only what Ashbaugh told the nurses and doctors who treated her—that she believed she had bitten by bedbugs at the hotel. See, e.g., Rutherford Decl. Ex. H, at 9 ("PT . . . complains of red itchy 'bug bites' all over body. PT states that she believes she has 'bed bugs'");[6] Pasik Decl. Ex. D ("Pt [complains of] itching and bite marks s/o

---

[5] To the extent Ashbaugh also relies on the statement in her declaration that she "was bitten by many bed bugs" at the Residence Inn, Pasik Decl. Ex. A, this statement too is pure speculation, and the Court therefore will not credit it. See, e.g., Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, . . . ." (emphasis added)).

[6] The advice of Ashbaugh's treating doctor that she should switch hotels or hotel rooms does not reflect an opinion that the insect bites occurred at the Residence Inn. See id. Ex. H, at 14 ("Make sure to switch rooms or hotels and wash any clothes you have worn since being in that room."). Ashbaugh also mischaracterizes the testimony of her treating doctor, stating that "[a]t the hospital, where she reported that she was bitten up at the hotel, a doctor told her it was insect bites, and notably this doctor said 'that hotel, I have told them before to take care of that bedbug situation.'" Pl.'s Opp'n at 2. In fact, Ashbaugh testified that her treating doctor said no such thing:

> Q. I think we were at the stage where this young doctor said to you something to the effect of, oh, that hotel, I've told them before to take care of that bedbug situation.
>
> A. He didn't say "bedbug."
>
> Q. What did he say?
>
> A. He said basically "that situation."
>
> Q. So at this point you hadn't heard anything about bedbugs?
>
> A. No.

10

contract with bed bugs on 4/18/09. . . . Pt reports that on 4-18-09 she was staying at the Marriot Hotel in Atlanta Georgia, where she received approxamately [sic] 66 bed bug bites over her face, both arms, wrists, buttocks, hips, and legs."); id. Ex. E ("CC [Chief Complaint]:  Bug bite after staying in hotel in Georgia."). Moreover, Ashbaugh acknowledged during her deposition that no one, including her doctors, told her she had been bitten by bedbugs.  Rutherford Decl. Ex. D (Ashbaugh Dep.), at 71 ("Q.  Did anybody ever tell you exactly what it is that bit you?  A.  No. . . . Q.  [D]id any medical professional at any time tell you exactly what type of insect bit you?  A.  No."). In sum, none of the materials submitted by Ashbaugh is sufficient to create a disputed issue of material fact precluding summary judgment.

Further, each of the cases Ashbaugh relies upon in support of her contention that summary judgment is inappropriate is easily distinguishable.  In Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 675 (7th Cir. 2003), a case upholding punitive damages awarded in a bed bug suit, management of the defendant hotel had refused to fumigate the hotel, even though its bed bug infestation was of "farcical proportions," was well-known by the hotel staff, and had been confirmed by an exterminator.  Id.  Indeed, even the plaintiffs' room was known by the defendant hotel to be infested as it had been classified under the "DO NOT RENT UNTIL TREATED" category, and it had not been treated when the plaintiffs checked in.  Id.  Similarly, in Grogan v. Gamber Corp., 858 N.Y.S.2d 519, 525-26 (Sup. Ct. 2008), in which the court denied the defendant hotel's motion for summary judgment on plaintiffs' negligence claim, there was substantial

---

Rutherford Decl. Ex. D (Ashbaugh Dep.), at 55.  In any event, Ashbaugh's treating doctor's statements to her—whatever they were—are inadmissible hearsay insufficient to create a disputed issue of material fact.

evidence that the plaintiffs were bitten by bedbugs while staying at the hotel: one plaintiff testified, for example, that she was awakened by something biting her during the night and that, after turning on the lights in her room, she saw 40 to 50 live bugs, crushed bugs and blood splats on the sheets, and smears of blood on her hand. Id. at 521. The record also contained evidence that the hotel had notice of the risk of harm the bedbugs posed to plaintiffs as it contained extermination reports showing complaints about bedbugs and the presence of bedbugs in the hotel. Id. at 526. Not so here. No one—including Ashbaugh—ever saw a bed bug or any other insect at the Residence Inn, and prior to Ashbaugh's complaint, Senic, the hotel's General Manager, had never received a complaint about any kind of insect at the hotel.[7]

The other cases Ashbaugh relies upon merely stand for the unobjectionable proposition that an innkeeper "has a duty to inspect and is liable for such injuries caused by defects as would be disclosed by a reasonable inspection." Palagano v. Georgian Terrace Hotel Co., 123 Ga. App. 502, 505, 181 S.E.2d 512 (1971) (citing Hillinghorst v. Heart of Atlanta Motel, 104 Ga. App. 731, 735, 122 S.E.2d 751 (1961)); Gary Hotel Courts, Inc. v. Perry, 148 Ga. App. 22, 24, 251 S.E.2d 37 (1978). There is no question that this standard applies to Windsor but here, unlike in the cited cases, there is no evidence in the record to establish that Windsor breached any duty owed to

---

[7] Ashbaugh calls the "Incident Report" that she filed with Parker "intentionally evasive" because it does not mention the specifics of her complaint—that she believed she had been bitten by bed bugs or other insects. Pl's Opp'n at 4. Instead, it states simply, "Guest states something is wrong in the room; and it needs to be thoroughly inspected." Pasik Decl. Ex. B. Even if the Incident Report had contained the specifics of Ashbaugh's complaints, it would still be insufficient to create an issue of material fact because, as with Ashbaugh's medical reports, the Report would merely reflect Ashbaugh's belief that she was bitten by bedbugs, not her knowledge of that fact.

plaintiff by providing her an unclean or unsafe room or that her injuries were caused by the hotel. See Gary Hotel Courts, 148 Ga. App. at 23 (only after plaintiff presented evidence that he was injured when he sat in chair lacking webbing in defendant's hotel room was there a question for jury as to the hotel's alleged breach of its duty to inspect room); Palagano, 123 Ga. App. at 506 (only after plaintiff presented evidence that the bed of defendant hotel was defective was there a question for jury as to whether hotel could have discovered defect upon inspection).

For all of the foregoing reasons, Windsor's motion for summary judgment is hereby GRANTED, and the claims against it are dismissed.

### III.   Conclusion

Defendants' motion for summary judgment is GRANTED as to all of Ashbaugh's claims, and her complaint is dismissed. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:    Brooklyn, New York
          June 18, 2012

                                        /s/
                                        I. Leo Glasser
                                        Senior United States District Judge